In re Marcia L. PATE, Debtor.

Marcia L. PATE, Plaintiff,

v.

MELVIN WILLIAMS MANUFACTURED
HOMES, INC. and Greentree Financial
Corporation, Defendants.

Bankruptcy No. 95–10919.
Adv. No. 95–01107A.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

July 17, 1996.

Angela C. McElroy, McElroy & Toole, Augusta, GA, for plaintiff.

James T. Wilson, Jr., Augusta, GA, for Melvin Williams Manufactured Homes, Inc.

Robert J. Solomon, Kenney & Solomon, P.C., Duluth, GA, for Greentree Financial Corporation.

### ORDER

JOHN S. DALIS, Bankruptcy Judge.

Marcia L. Pate (hereinafter "Debtor") brings this adversary proceeding against Melvin Williams Manufactured Homes, Inc. and Greentree Financial Corporation (hereinafter "Greentree") asserting state law claims for violation of the Uniform Commercial Code—Sales as adopted in Georgia, Georgia

Motor Vehicle Sales Finance Act and fraud and for violation of the Federal Truth in Lending Act arising out of the Debtor's purchase and financing of a mobile home from the Defendants. The Defendants answered the complaint and Defendant Greentree filed a motion to stay the adversary proceeding and to compel the Debtor to submit the claims to arbitration according to the terms of the sales contract.[1] The motion is granted.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(b)[2] and 28 U.S.C. § 157(a), (b)(1)(2)(C) & (O)[3]. The claims asserted by the Debtor are core proceedings. *Chrysler Credit Corp. v. Ferris (In re Ferris)*, 42 B.R. 374 (S.D.Ga.1984) reversed on other grounds 764 F.2d 1475 (11th Cir.1984). (Bankruptcy Courts have jurisdiction to decide a Truth in Lending Act claim against a secured creditor that has filed a claim in the bankruptcy case. Paragraph (d)(3)(A) of the Emergency Resolution promulgated December 24, 1982 authorizes bankruptcy courts to hear matters necessary to the administration of bankruptcy cases which included "... counterclaims by the estate in whatever amount against persons filing claims against the estate." Compare, 28 U.S.C. § 157(b)(2)(C) at note 3.) Defendant Greentree filed a secured claim in the amount of $38,996.19 in the Debtor's Chapter 13 case. Additionally, the claims asserted by the Debtor against both Defendants arose before the bankruptcy filing, constitute assets of the estate, and this adversary proceeding therefore affects the liquidation of estate assets.

The arbitration clause included in the sales contract reads as follows:

18. ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of its arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of the Buyer(s). This arbitration contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award may be entered in any court having jurisdiction. The parties agree and understand that they chose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all

1. Co-defendant Williams did not file a similar motion but in its answer asserts that the complaint "is barred by the Arbitration provision in the agreements between [Debtor] and 'Williams'."

2. 28 U.S.C. § 1334(b) provides:

   Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case under title 11.

3. 28 U.S.C. § 157(a), (b)(1)(2)(C) & (O) provide:

   (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district. (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

   (2) Core proceedings include, but are not limited to—

   (C) counterclaims by the estate against persons filing claims against the estate;

   (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

powers provided by the law and the Contract. These powers include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.

The Debtor urges four grounds for denying Greentree's motion to compel arbitration: 1) the arbitration clause lacks mutuality of obligation and is therefore unconscionable; 2) the arbitration clause is unenforceable under the Georgia Arbitration Code [Official Code of Georgia Annotated (O.C.G.A.) § 9–9–1 et. seq.]; 3) the arbitration clause fails to adequately provide for the selection of an arbitrator; and 4) the clause impermissibly waives the Debtor's right to a jury trial under the Georgia Constitution. I find none of these reasons persuasive.

1. The Arbitration Clause is not unconscionable for lack of mutuality.

The parties concede that Georgia law applies to this contract. The Debtor asserts that under Georgia law the arbitration clause lacks mutuality of obligation because it forces the Debtor to arbitrate any claims she may have against the Defendants but preserves

the Defendants' right to bring an action in court to enforce the security agreement or to collect any amounts payable under the contract.

■■■ Georgia law does not require a contract to provide for mutual obligations if the contract provides additional consideration to support one party's obligation. *Brack v. Brownlee*, 246 Ga. 818, 273 S.E.2d 390 (1981). "Where there is no other consideration for a contract, the mutual promises must be binding on both parties, for the reason that only a binding promise is sufficient consideration for a promise of the other party." *Id.* at 391, *citing* 17 Am.Jur.2d Contracts, 348, § 11. However, "[w]here there is any other consideration for a contract so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential." *Id. citing Crawford v. Baker*, 207 Ga. 56, 60 S.E.2d 146 (1950). The Debtor does not dispute that the parties have provided each other with consideration beyond the promise to arbitrate some of the claims arising between them. Therefore, the commitment to arbitrate does not have to be mutually binding upon all parties.

■■■ The Debtor argues that an arbitration clause can only bind a party if it also equally binds the opposing party. The Debtor fails to cite Georgia law supporting this proposition, and I cannot find any such Georgia doctrine. Furthermore, any state law doctrine which requires a greater degree of mutuality for enforcing arbitration agreements than for enforcing any other contractual obligation is contrary to and is preempted by the Federal Arbitration Act 9 U.S.C. § 1 et seq. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (Placing agreements to arbitrate on the same standard as other contracts). The Federal Arbitration Act, section 2 [4], requires courts to enforce arbitration clauses except on grounds existing at law or in equity for the revocation of all contracts.

**4.** 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law doctrine that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the Federal Arbitration Act]." *Doctor's Assoc., Inc. v. Casarotto,* —— U.S. ——, ——, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996), *citing Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987).

2. The Georgia arbitration code (O.C.G.A. § 9–9–1 et seq.) will not bar enforcement of the arbitration clause.

■■■ Agreements to arbitrate disputes arising out of consumer transactions are not enforceable under the Georgia Arbitration Act. O.C.G.A. § 9–9–2 [5]. However, the instant arbitration clause incorporates the Federal Arbitration Act, which Act preempts any conflicting state law invalidating arbitration clauses in transactions affecting interstate commerce. *Doctor's Assoc., Inc.,* —— U.S. at ——, 116 S.Ct. at 1657; *Ruby–Collins, Inc. v. Huntsville,* 748 F.2d 573, 575 (11th Cir. 1984). *But see, Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) (A contract specifying that the agreement to arbitrate shall be governed according to California law explicitly adopts the procedures and limitations on arbitration provided by the California Code, notwithstanding contrary Federal Arbitration Act provisions.) Greentree is a Delaware corporation with its principal place of business in Minnesota. Because the Federal Arbitration Act preempts the Georgia Arbitration Code, the arbitration clause is enforceable notwithstanding any Georgia Code provision to the contrary.

3. The arbitration clause is enforceable notwithstanding the agreement's potential failure to appoint an arbitrator.

■■■ The Debtor argues that the arbitration clause fails to provide an adequate means of selecting an arbitrator, and is therefore only an "agreement to agree" upon arbitration. Indeed, the clause, as drafted, would allow Greentree to indefinitely delay the adjudication of the Debtor's claims by continually proposing unacceptable arbitrators. However, the Federal Arbitration Act provides that if the agreement fails to specify an arbitrator or if the parties fail to select an arbitrator, then either party may petition the court to appoint an arbitrator to resolve the dispute. 9 U.S.C. § 5.[6]

4. Waiver of jury trial.

■■■ The Debtor asserts that the arbitration clause is unenforceable under Georgia law because of State constitutional and statutory guarantees of a jury trial. *See, Bank South, N.A. v. Howard,* 264 Ga. 339, 444 S.E.2d 799 (1994). The Georgia Supreme Court has distinguished contractual waiver of jury trial clauses which are unenforceable from arbitration agreements which are au-

---

5. O.C.G.A. § 9–9–2(c) provides in part:
(c) This part shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following, to which this part shall not apply:

. . . . .

(6) Any contract for the purchase of consumer goods, as defined in Title 11, the "Uniform Commercial Code," under subsection (1) of Code Section 11–2–105 and subsection (1) of Code Section 11–9–109;
(7) Any contract involving consumer acts or practices or involving consumer transactions as such terms are defined in paragraphs (2) and (3) of subsection (a) of Code Section 10–1–392, relating to definitions in the "Fair Business Practices Act of 1975".

6. 9 U.S.C. § 5 provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

thorized under the Georgia Code. *Id.* at 800, n. 5. Furthermore, by bringing this action in the bankruptcy court, the Debtor has consented to the equitable jurisdiction of this court and has waived her right to a jury trial in this forum. *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.),* 132 B.R. 979 (Bankr.S.D.Ga.1991). The Georgia doctrine striking down pre-litigation jury trial waivers does not apply here.

### 5. Conflict between the Bankruptcy Code and the Federal Arbitration Act.

The final issue for consideration is whether enforcing the arbitration clause under the Federal Arbitration Act conflicts with the policies and goals of the Bankruptcy Code. The Federal Arbitration Act embodies Congress' intent to enforce contractual arbitration clauses to provide speedy dispute resolution without delay and obstruction in the courts. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967). The Federal Arbitration Act established a "federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). See also, *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Congress established the Bankruptcy Code as a means of providing debtors an efficient, costs effective means of obtaining a fresh start and for dispute adjudication. Congress' intent in the Bankruptcy Reform Act of 1978 was to reduce "... unnecessary delays, expenses, and duplications of effort ... in bankruptcy cases." *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 58 (3d Cir.1983) (Bankruptcy court has discretion to compel parties to arbitrate issues). *But see, Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989) (Bankruptcy courts lack discretion to deny arbitration in non-core proceedings). Although the rationale of *Zimmerman* was repudiated in *Hays, Hays* dealt with a non-core proceeding and recognized that the court "must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that ... such a clause [must be enforced] unless that effect would seriously jeopardize the objectives of the [Bankruptcy] Code." *Id.* at 1161. However, general assertions that the Bankruptcy Code was "designed to consolidate jurisdiction over property of the debtor and reflects a policy favoring a unified and consistent exercise of jurisdiction and supervision over the debtor and the debtor's estate," or that allowing arbitration would affect the overall administration of the estate by causing inefficient delay, duplicative proceedings, or the collateral effect of such arbitration on estate administration are insufficient to override the general federal policy favoring arbitration. *Id.* at 1157–1158.

In this case no specific adverse effect can be shown. The Debtor's underlying Chapter 13 case was filed June 12, 1995. Under the terms of her plan confirmed October 23, 1995 relative to the claim of Greentree, the plan provided

> Debtor shall make regular post-petition payments as they come due to creditors (named below) holding security interest in Debtor's residence. Any claim filed for pre-petition arrearage on such obligations shall be paid by distributions from the Chapter 13 trustee. Greentree Financial.

Defendant Greentree has an allowed, unobjected to secured claim in the Chapter 13 case reflecting a principal balance due as of the Chapter 13 filing of $38,996.19 which claim includes a prepetition payment arrearage of $700.80. By order filed December 6, 1995 I granted Defendant Greentree's motion for relief from the stay of 11 U.S.C. § 362 in order to foreclose its security interest in the mobile home that is the subject matter of the contract between the parties at issue in this adversary proceeding. By order filed January 11, 1996 I denied the Debtor's motion to reconsider the granting of relief from stay to Defendant Greentree. With the grant of relief from the stay of 11 U.S.C. § 362, the Chapter 13 trustee will make no further distributions to Greentree under the Debtor's plan. Relief from the stay of § 362 having taken the administration of the debt to Greentree outside the distribution scheme of

the Chapter 13 case, no other creditor interests are affected. The Plaintiff has failed to meet her burden of proof by a preponderance of the evidence that this court should exercise its discretion by refusing to permit arbitration of this core proceeding, the Plaintiff has failed to establish any adverse effect on the administration of this case by permitting the contractually agreed to arbitration to go forward. *Hays supra* at 1156.

It is therefore ORDERED that the motion of Greentree to stay this adversary proceeding and order arbitration of the claims of the Debtor Marcia Lisa Pate against the Defendants Greentree Financial Corp. and Melvin Williams Manufactured Homes, Inc. is granted.